UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO: 00-6228-CIV-SEITZ/GARBER

HUGH HODGE,

    Plaintiff,

v.

TIMOTHY M. CHURCH, et al.,

    Defendants.
_____/

## DEFENDANT CITY OF HALLANDALE'S MOTION FOR SUMMARY JUDGMENT, CONCISE STATEMENT OF MATERIAL FACTS AND INCORPORATED MEMORANDUM OF LAW

Defendant, City of Hallandale, pursuant to Fed.R.Civ.P. 56, moves the Court to enter summary judgment in its favor and states:

1. Plaintiff sued the City of Hallandale for negligence because he was allegedly attacked by a police dog and then beaten by police officers.

2. Plaintiff's negligence claim against the City of Hallandale is barred by sovereign immunity and must be dismissed.

Wherefore, Defendant, City of Hallandale, moves the Court for summary judgment.

### CONCISE STATEMENT OF MATERIAL FACTS

In the middle of the night, Plaintiff stole a vehicle, led the police on a chase and ultimately drove the stolen vehicle into a fence. Plaintiff then ran from the police and hid behind shrubbery. A copy of pages 6-9 of Plaintiff's deposition is attached hereto as "Exhibit A". Plaintiff was arrested and

ultimately pled guilty to the charges of possession of cocaine, grand theft, possession of drug paraphernalia, driving with a suspended license and resisting arrest without violence. A copy of the Court's Status report is attached hereto as "Exhibit B".

## MEMORANDUM OF LAW

Plaintiff's only claim against the City of Hallandale is a Negligence claim asserted in Count Ten of the Complaint. A party is bound by the allegations of its complaint and a Plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. Soo Line Railroad Co. v. St. Louis Southwestern Railway Co., 125 F.3d 481, 483 (7th Cir. 1997). It is also well established that a party is bound by his own deposition testimony. 29A Am Jur 2d, Evidence Sec. 1449. In the case sub judice, this Defendant is entitled to summary judgment because the allegations of Plaintiff's Complaint and his deposition testimony show that the City of Hallandale is entitled to sovereign immunity.

Plaintiff alleged that he was apprehended by the police and forced to lie face down on the ground with his hands handcuffed behind his back (pars. 80 and 81). Plaintiff did not struggle, resist arrest or verbally abuse the officers (par. 83). Plaintiff further alleged that one of the police officers "ordered his canine partner to savagely attack the Plaintiff while the Plaintiff was lying prone, face down upon the ground with his hands handcuffed behind his back. The canine officer

complied with his handler's instructions, savagely biting the Plaintiff in the back of his leg and on his buttocks." (par. 84). Plaintiff also alleged that the officer "instigated and encouraged the (canine's) attack" and that another officer "kicked the Plaintiff and hit him repeatedly with flashlights and/or batons ... and then dragged the Plaintiff into the street where they (police officers) continued to kick and beat him." (pars. 85 and 86).

Plaintiff's own deposition testimony also shows that his Negligence claim against the City of Hallandale is barred by sovereign immunity. Plaintiff unequivocally testified that the individual police officer defendants acted maliciously and in bad faith. A copy of page 58 of Plaintiff's deposition testimony is attached hereto as "Exhibit C."

Section 768.28(9)(a), Florida Statutes, provides in relevant part:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent ... committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Since Plaintiff claims that the police officers acted maliciously and in bad faith, the City is immune from liability. Kohn v. City of Miami Beach, 611 So.2d 538, 539 (Fla. 3d DCA 1992)("the city and county are rendered immune from liability because the alleged common law torts of their employees are claimed to have been committed with malice and bad faith"). See also Stephenson v. School Bd. of Polk County, 467 So.2d 1112 (Fla. 2d DCA 1985).

## CONCLUSION

Based on the foregoing, Defendant, City of Hallandale, is entitled to summary judgment.

## CERTIFICATE OF SERVICE

I certify that a copy hereof was mailed to Daniels & Daniels, P.A., 4300 North University Drive, Suite B-200, Fort Lauderdale, FL 33351, and Adorno & Zeder, 888 S.E. 3rd Ave., Suite 500, Ft. Lauderdale, FL 33316, on December 1, 2000.

Mark Goldstein
City Attorney, Hallandale Beach
400 S. Federal Highway
Hallandale Beach, Florida 33009
Telephone (954) 457-1325
Facsimile (954) 457-1342

FL Bar No: 882186

```
 1    I assume you haven't had any?
 2         A.   Right.  Right now, I'm in the drug program
 3    here at this facility.
 4         Q.   And how are you doing?
 5         A.   I'm doing real well.
 6         Q.   Okay.  Do you remember the incidents
 7    leading up to your arrest that night in September of
 8    1998?
 9         A.   Yes, I do.
10         Q.   Okay.  Had you stolen a car that evening?
11         A.   Yes.
12         Q.   And by the way, you were charged with a
13    series of offenses, including stealing a car, eluding
14    the police, resisting, et cetera; did you plead to
15    those charges?
16         A.   Yes, I did.
17         Q.   Okay.  So, your only claim or claims then
18    is involved in the amount of force used during your
19    arrest, would that be a correct statement?
20         A.   Yes.
21         Q.   Okay.  Let's talk about the events leading
22    up to your arrest.  You were driving a car that
23    didn't belong to you and you didn't have a right to
24    drive it, correct?
25         A.   Right.
```

```
 1          Q.   Did you, at any time that night or early
 2    morning hours, whenever it happened, become aware
 3    that the police were behind you?
 4          A.   While I was in the car?
 5          Q.   Yes, sir.
 6          A.   Yes, I did.
 7          Q.   And were you trying to get away from them,
 8    so to speak?
 9          A.   Yes, I was.
10          Q.   Okay.  And can you tell me what you did to
11    try to elude them?
12          A.   I sped up.
13          Q.   Okay.  Was anybody in the car with you?
14          A.   No.
15          Q.   Okay.  Do you know about where you were
16    when you noticed the police and started speeding up?
17          A.   At that time, I was new to this area and I
18    have no idea where I was.
19          Q.   Okay.  You ended up hitting a fence or
20    something like that, didn't you?
21          A.   Yeah, when I stopped the car.
22          Q.   Right.  And do you know where that was?
23          A.   No.
24          Q.   Okay.  Did you then get out of the car?
25          A.   Yes, I did.
```

```
 1         Q.   And was the police near you, behind you?
 2         A.   No.
 3         Q.   What -- did you start running and try to
 4   find a place to hide?
 5         A.   Yes, I did.
 6         Q.   Where did you hide?
 7         A.   I ran behind the house that I hit the
 8   fence, I ran -- I jumped over the fence behind that
 9   yard and I came into the backyard of the - of another
10   house, and I went around to the front of the house
11   and hid in some shrubbery.
12         Q.   Okay.
13         A.   Behind some shrubbery.
14         Q.   Okay.  And up to finding your hiding place,
15   were you aware of any police --
16         a.   No.
17         Q.   -- in your immediate vicinity?
18         A.   No.
19         Q.   But they had followed you before with their
20   lights on, right?
21         A.   Yeah.
22         Q.   Okay.  All right.  How long do you think
23   you were in the shrubs before something else
24   happened?
25         A.   Around five minutes.
```

```
 1        Q.   Okay.  You were not familiar with that
 2   area, were you?
 3        A.   No.
 4        Q.   Do you remember what you were wearing that
 5   night or that morning?
 6        A.   Yes, I do.
 7        Q.   What was that?
 8        A.   I was wearing a pair of cutoff jeans
 9   shorts, bluejeans shorts, and I believe it was a
10   white shirt.
11        Q.   How about did you have any shoes on?
12        A.   Yes, I had some sandals on.
13        Q.   Okay.  Now, before -- do you have any idea
14   what time of day or night it was when you ended up in
15   that bush?
16        A.   It was around 1:00 A.M.
17        Q.   Okay.  Now, let's go back about six or
18   seven hours up to that point in time; did you have
19   any drugs that evening?
20        A.   No, I didn't.
21        Q.   Did you have anything to drink that
22   evening?
23        A.   Yes, I did.
24        Q.   And what did you have to drink?
25        A.   A beer.
```

# THE CIRCUIT/COUNTY COURT, IN AND FOR BROWARD COUNTY, FLORIDA

FAILURE TO PAY FINE BY THE BELOW DATE MAY RESULT IN A WARRANT FOR YOUR ARREST AND/OR THE SUSPENSION OF YOUR DRIVER'S LICENSE AND DELINQUENCY FEES IMPOSED.

DATE 10-20-98

DEFENDANT Hugh Hodge

CASE NO. 98-18294E0  ARREST NO. FL0060944  AKA GREG HODGES

COURT STATUS:
- ADJ. GUILTY I-V $250. VC $5 — TRUST FUND / HOURS COMM. SERVIC — SN/ X50 ASSESSMENT EACH COUN
- WITHHELD — VC EACH COUNT
- NOLLE PROSEQUI — DISMISSED
- PUBLIC DEFENDER FEE $50 — PUBLIC DEFENDER ASSESSMENT $50 VC

MAGISTRATE:
- TRIAL
- JURY
- COURT
- 1ST V.O.
- FINAL V.O.

ARRAIGNMENT:
- CHANGE OF PLEA
- PLED GUILTY I-V
- PLED NOLO

CHARGE(S):
I - Disorderly Intox
II - Resist Arrest
III - Poss drug para
IV - Obstruct w/o violence
V - Theft w/o viol

SENTENCE: I+II - 7 BS in BCS w/c for 45 Days T/S
RESTITUTION RESERVED
No document

COUNT — FINE — CC — CJC — EMTF — CDC — SN1

PROBATION WITH SPECIAL CONDITIONS
DUI USE ONLY
LICENSE SUSP.
DUI SCHOOL
DAYS IMMOBILIZATION
COMMUNITY SERVICE HOURS
EVALUATION
WORK PERMIT

COUNT(S) III-V  TIME SERVED 45 DAYS
FINE — COURT COST — 5% — V.C. — CJC — SN1
PLUS $ — FINE — COURT COST — 5% — V.C. — CJC — SN1
$ — FINE — COURT COST — 5% — V.C. — CJC — SN1
$ — DEFERRAL FEE TO

P4 5/97
JUDGE [signature]
BY [signature] (DEPUTY CLERK)
SHERIFF'S COPY

EXHIBIT 2 Deponent H. Hodge Date 11-7-00 Rptr. [signature]

EXHIBIT "B"

```
 1        Q.    (By Mr. Goldstein)  My name is Mark
 2   Goldstein, I represent Officer Church and the City of
 3   Hallandale in this case.  I'm not going to rehash all
 4   the questions that Mr. Gunther asked you, I'm just
 5   going to follow up on a few and maybe ask a few of my
 6   own.
 7             It's your position that the officers from
 8   the City of Hallandale and the City of Fort
 9   Lauderdale acted maliciously and in bad faith in this
10   case?
11        A.    Definitely.
12        Q.    Why do you say that?
13        A.    I wasn't resisting arrest and the -- I gave
14   myself up, I stood up and put my hands in the air and
15   they proceeded to kick my ass.  And then, to put the
16   dog on me, for what reason?
17        Q.    Well, would you also say that they acted in
18   willful and wanton disregard for your life and
19   safety?
20        A.    For my safety?
21        Q.    Yeah.
22        A.    When?
23        Q.    During this incident.
24        A.    While they were beating me, were they
25   concerned about my safety?  I don't think so.
```