UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 00-6228-CIV-SEITZ/GARBER

HUGH HODGE,

    Plaintiff,

v.

TIMOTHY M. CHURCH, et al.,

    Defendants.
_____/

## MOTION TO COMPEL DEFENDANTS, TIMOTHY M. CHURCH AND CITY OF HALLANDALE, TO PRODUCE PHOTOGRAPHS OF POLICE OFFICER TIMOTHY M. CHURCH.

COMES NOW the Plaintiff, HUGH HODGE, by and through his undersigned attorney, and files this Motion to Compel Defendants, TIMOTHY M. CHURCH and CITY OF HALLANDALE to Produce Photographs of Police Officer Timothy M. Church and as grounds therefor, states as follows:

1. On November 21, 2000, the Plaintiff served his Second Request for Production to Defendants, TIMOTHY M. CHURCH and CITY OF HALLANDALE. It requested:

    1. Photographs, size 8 x 10, of TIMOTHY M. CHURCH showing (a) only his face and neck from the front; (b) only his face and neck from the side; (c) a frontal view photograph of him from head to toe facing the camera; and (d) a side-view photograph of him from head to toe. All photographs are to be taken in the clothes he wore at the time of this incident. If these clothes are not available, all photographs are to taken in his police uniform.

2. The Defendants responded as follows:

    Defendants, Timothy M. Church and City of Hallandale, object to Plaintiff's Second Request for Production because Fed.R.Civ.P. 34 does not require the Defendants to take photographs for the



NON-COMPLIANCE OF S.D. Fla. L.R. _____

USDC CASE NO. 00-6228-CIV-SEITZ/GARBER
Page 2

Plaintiff. Furthermore, photographs of law enforcement personnel are confidential and exempt from disclosure. Sec. 119.07(3)(i)(1), Fla. Stat.

3. In regards to our request that the Defendants take the photographs of Officer Timothy M. Church, the Plaintiff will accept photographs of Officer Church which are in the control and custody of the Hallandale Police Department.

4. In regards to the argument that the photographs of law enforcement personnel are **confidential** and exempt from disclosure pursuant to Sec. 119.07(3)(i)(1) Fla. Stat., the following is stated:

   A. It first should be pointed out that the statute does **not** use the word "confidential."

   B. The purpose of Section 119.07(3)(i) is to protect the safety of law enforcement officers and their families by removing certain information relating to such individuals from the mandatory disclosure requirements of Ch. 119. F.S. See 1990 WL 509033 (Fla.A.G.), a copy of which is attached to this Motion. It should be pointed out that the Opinion refers to 119.07(3)(k). However, a review of the legislative history reveals that 3(k) is not 3(i).

   C. The Opinion states that the Legislature recognized a distinction between the words "exempt" and "confidential." The staff analysis of the enabling legislation states that "if the information was confidential it could not be revealed under any circumstances. Thus exempt information could be revealed at the discretion of the agency."

   D. Therefore, the release of the information was within the discretion of the agency. However, the exercise of any such discretion by the agency must be exercised in light of the legislative purpose. Accordingly, in determining whether such information should be

USDC CASE NO. 00-6228-CIV-SEITZ/GARBER
Page 3

disclosed, an agency should determine whether there is a statutory or **substantial policy need** for disclosure.

    E.    In that opinion, the "agency" that was referred to was the police department. However, it is our position that these same rules apply to the Courts. In that regard, we argue that there is a "substantial policy need for disclosure" of the photographs, i.e., to protect the interests of justice in order to determine which police officers violated Mr. Hodge's rights.

    5.    It is undisputed that Mr. Hodge was fleeing from the police and hiding in the bushes. However, what happened after that is disputed.

    A.    Officer Hart states in his deposition that he was in a patrol car chasing Mr. Hodge. After Mr. Hodge abandoned the car and fled on foot, Officer Hart stated that he called the K-9 Unit and set up a perimeter. Officer Hart states that he never left his perimeter post (Deposition of Hart, Page 31, Lines 5-11).

    B.    At that time, Officer Church (with the City of Hallandale) was training his dog (Gero) with Officer Reed (with the City of Fort Lauderdale). They responded to the scene.

    C.    Officer Church stated that when the dog located Mr. Hodge hiding in the bushes, Officer Church identified himself as a police officer and advised Mr. Hodge to come out with his hands up or he would release the dog. He stated that he gave this warning two times (Deposition of Church, Page 24, Lines 13-25; Page 25, Lines 1-25; and Page 26, Lines 1-18).

    D.    Officer Church stated that when he did not receive a response from Mr. Hodge, he slacked off on the leash and gave the apprehension command. The dog was never unleashed (Deposition of Church, Page 26, Lines 19-24 and Page 29, Lines 20-21).

    E.    Mr. Hodge finally stopped resisting and put his hands behind his back and

was taken into custody (Deposition of Church, Page 36, Lines 15-18).

      F.     Mr. Hodge was handcuffed. Officer Reed then helped hin to his feet and walked him to the car. Then Officers Shields and Smith drove him to the hospital (Deposition of Church, Page 37, Lines 1-3 and Deposition of Reed, page 34, Lines 3-22).

      G.     During the entire incident, Officers Reed and Church were the only police officers present (Deposition of Church, Page 33, Lines 16-25, Page 34, Lines 1-8, and Page 45, Lines 5-8).

      H.     No civilians were present (Deposition of Reed, Page 20, Lines 8-10 and Deposition of Church, Page 44, Lines 7-11).

      6.     However, a civilian, Mr. Joseph Mayadeene, witnessed the entire incident. His deposition was taken on February 7, 2001.

      A.     Mr. Mayadeene first saw two (2) police officers with flashlights. They did <u>not</u> have a dog with them (Page 6, Lines 14-16 and Page 7, Lines 20-23).

      B.     Then <u>another</u> officer came with a dog (Page 11, Lines 15-17). That officer then let the dog off the leash (Page 12, Lines 17-19). None of the police officers identified themselves or warned Mr. Hodge to come out or they would put the dog on him (Page 15, Lines 7-20).

      C.     At that time, there were three (3) police officers present (Page 16, Lines 2-5).

      D.     While the dog was on him, Mr. Hodge was screaming "Get him off me" (Page 17, Lines 1-5). Then one of the police officers pulled Mr. Hodge out by his foot (Page 18, Lines 7-9). Then they took the dog off him and put handcuffs on him (Page 19, Lines 7-8).

  E.  At that time, there were four (4) officers present (Page 19, Lines 9-16).

  F.  After they put the handcuffs on him, one of the officers kicked him (Page 23, Lines 6-9 and Page 25, Lines 16-23).

  G.  After the officer kicked him, he let the dog, who was on the leash, on Mr. Hodge and said "sic-em." (Page 26, Lines 4-8 and Page 29, Lines 5-14). Mr. Hodge was handcuffed at that time (Page 30, Lines 6-8).

  H.  At that time, a police officer pointed a gun at Mr. Mayadeene and told him to leave or he would blow his head off (Page 31, Lines 13-17 and Page 34, Lines 1-10).

  I.  This police officer was not one of the original four. He came in after the four were there (Page 31, Lines 18-23).

  J.  The police then dragged Mr. Hodge out to the road. Then two officers helped him up from the road and put him into a car (Page 39, Lines 13-18 and Page 37, Lines 7-12).

  K.  Toward the end of the incident, there were about 15-20 police officers present (Page 52, Lines 13-16).

  L.  Mr. Mayadeene is certain that the police saw him because when he went outside, he turned on the lights by the front of the door and was looking at the police (Page 50, Lines 11-24 and Page 43, Lines 1-16).

  7.  There is a disturbing difference between what the police officers allege and what Mr. Mayadeene alleges. In particular, Officers Church and Reed state that they were the only officers involved in the apprehension of Mr. Hodge while Mr. Mayadeene states that there were 15-20 officers present.

8.   Mr. Hodge in his deposition states that Officer Hart was kicking him (Deposition of Hodge, Page 18, Lines 7-24).

9.   Additionally, it should be pointed out that the Courts have held that if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation, such as an unprovoked beating, takes place in his presence, then that officer is directly liable under Section 1983. Ensley v. Soper, 142 F.3rd 1402 (11th Cir. 1998).

10.   Therefore, in the interest of justice, we need to know, as best we can, who was present when Mr. Hodge was apprehended and "beaten."

11.   Mr. Mayadeene states in his deposition that if he saw photographs of the police officers, he would be able to identify the police officer who pointed a gun at him and the first two officers who walked into the yard (Deposition of Mayadeene, Page 41, Lines 1-16).

12.   Mr. Hodge believes that he would be able to identify the police officers who beat him and put the dog on him when he was handcuffed.

13.   In order that we do not jeopardize the safety of the police officers, we are not asking for possession of the photographs, but merely to be able to view them at the office of Defendants' attorney.

14.   We are *not* asking for any other information regarding the police officers.

15.   The undersigned attorney states that he has conferred in writing and orally with counsel for the opposing parties in a good faith effort to resolve by agreement the issues raised in this discovery motion, but has been unable to resolve this matter.

WHEREFORE, the Plaintiff respectfully requests that this Court order the Defendants to respond to Plaintiff's Request to Produce by producing the photographs at the Defendants'

USDC CASE NO. 00-6228-CIV-SEITZ/GARBER
Page 7

attorney's office or any other reasonable location, so that the Plaintiff, HUGH HODGE, and the witness, Joseph Mayadeene, may view these photographs only.

**I HEREBY CERTIFY** that a copy of the foregoing was faxed (954) 457-1342 mailed on February 23, 2001, to MARK GOLDSTEIN, ESQ., Attorney for Defendant, City of Hallandale Beach, 400 S. Federal Highway, Hallandale Beach, Florida 33009 and faxed (954) 760-9531 and mailed to DIETER K. GUNTHER, ADORNO & ZEDER, P.A., Attorney for Defendants, Thomas Reed, Patrick Hart, David Wheeler and City of Fort Lauderdale, 888 Southeast 3rd Avenue, Suite 500, Fort Lauderdale, FL 33335-9002.

DANIELS & DANIELS, PA
Attorneys for Plaintiff
4300 North University Drive, Suite B-200
Fort Lauderdale, Florida 33351
Telephone:   (954) 572-7100
Fax:           (954) 572-0667

By: _____
GORDON S. DANIELS, ESQ.
Florida Bar No. 350648

MOTION TO COMPEL HALLANDALE.wpd

```
                                                                       Page 1
Citation                  Search Result         Rank 1 of 20       Database
1990 Fla. Op. Atty. Gen. 154                                       FL-AG
Fla. AGO 90-50
(Cite as: 1990 WL 509033 (Fla.A.G.))
```

\*1 Office of the Attorney General
State of Florida

AGO 90-50
June 28, 1990

Mr. Tom Collins
Chief of Police
City of Apopka
175 East 5th Street
Apopka, Florida 32703

Dear Chief Collins:

  You ask substantially the following questions:
    1. Is a **police officer** who is required to maintain a telephone at his home address liable for the monthly charge to the telephone company for **not** publishing the officer's home telephone **number**?
    2. Does the **posting** of the **police officers' photographs**, together with their **names** and **I.D. numbers** in the hallway of the **police department** violate s. 119.07(3)(k), F.S.?
    3. May City Hall maintain the **names** and addresses of law enforcement officers without violating s. 119.07(3)(k), F.S.?
  In sum, I am of the opinion:
    1. Section 119.07(3)(k), F.S., does **not prohibit** a telephone company from listing or publishing the **name**, address, and telephone **numbers** of those individuals with telephone service even though such individuals may be law enforcement officers.  A law enforcement officer wishing to have an unlisted or unpublished telephone **number** would be responsible for any charges imposed by the telephone company for providing such a service.
    2. The purpose of s. 119.07(3)(k), F.S., is to protect the safety of law enforcement officers and their families by removing certain information relating to such individuals from the mandatory disclosure requirements of Ch. 119, F.S. While the statute does **not prohibit** a **police department** from **posting** the **names**, **I.D. numbers**, and **photographs** of its **police officers** in the hallway of the department for public display, absent a strong public policy for disclosure, such a display would appear to be counter to the purpose of the exemption.
    3. While s. 119.07(3)(k), F.S., exempts the addresses, telephone numbers and photographs from the mandatory disclosure requirements of s. 119.07(1)(a), F.S., it does not prohibit the city from maintaining the names and addresses of its law enforcement officers.
  Section 119.07(1)(a), F.S., requires the custodian of public records to "permit the record to be inspected and examined by any person desiring to do so,

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Page 2

1990 Fla. Op. Atty. Gen. 154
(Cite as: 1990 WL 509033, *1 (Fla.A.G.))

at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee." Only those public records which are presently provided by law to be confidential or which are **prohibited** from being inspected by the public, whether by general or special law, are exempt from the provisions of subsection (1). [FN1]

Section 119.07(3)(k), F.S., provides such an exemption by stating:

The home addresses, telephone **numbers**, and **photographs** of active or former law enforcement personnel ... whose duties include the investigation of ... criminal activities; the home addresses, telephone **numbers, photographs**, and places of employment of the spouses and children of such personnel; and the **names** and locations of schools and day care facilities attended by the children of such personnel are exempt from the provisions of [s. 119.07(1), F.S.].

Question One

*2 Chapter 119, F.S., the Public Records Law, generally ensures the public's access to the records of its governmental agencies. Section 119.07(3)(k), F.S., in providing a specific exemption from the mandatory disclosure provisions of s. 119.07(1), F.S., for certain information relating to law enforcement officers and their families, does not limit the application of the exemption to any specified records. [FN2] Thus, the exemption afforded by s. 119.07(3)(k), F.S., applies to any record subject to disclosure pursuant to Ch. 119, F.S.

Chapter 119, F.S., however, is not generally applicable to private entities unless such an entity is acting on behalf of a governmental agency. [FN3] Information maintained by the telephone company, therefore, is not normally subject to the provisions of Ch. 119, F.S. [FN4] Thus, s. 119.07(3)(k), F.S., does not prohibit the disclosure of the name, address, or telephone number of law enforcement officers when such information is maintained by private companies which are not acting on behalf of the public agency.

Section 119.07(3)(k), F.S., therefore, would not appear to preclude a telephone company from publishing the name, address, and telephone numbers of those persons with telephone service even though such individuals may be law enforcement officers. I am not aware of any provision which would exempt a law enforcement officer from the charges normally imposed by the telephone company for providing an unlisted or unpublished telephone number. Thus, should the law enforcement officer wish to remove his name from the telephone directory, he would, in my opinion, be responsible for payment of any charges imposed by the telephone company. [FN5]

Question Two

Section 119.07(3)(k), F.S., constitutes an exemption to the mandatory disclosure requirements of s. 119.07(1)(a), F.S. Thus, the police department is not required to release the information exempted by s. 119.07(3)(k), F.S. Your question, however, relates not to whether such information relating to law enforcement officers must be disclosed but whether it may be disclosed by the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Page 3

1990 Fla. Op. Atty. Gen. 154
**(Cite as: 1990 WL 509033, \*2 (Fla.A.G.))**

agency head.

An examination of the legislative history surrounding the enactment of s. 119.07(3)(k), F.S., by Ch. 79-187, Laws of Florida, indicates that it was the intent of the Legislature to codify the so-called police secrets rule. [FN6] While the legislative history reveals little discussion about the purpose of the exemption other than the necessity of removing the information from public access, subsequent amendments to the statute make it clear that the purpose of the exemption is to protect the safety of these individuals and their families. [FN7]

The legislative history relating to the adoption of Ch. 79-187, Laws of Florida, however, indicates that the Legislature recognized a distinction between the terms "exempt" and "confidential." [FN8]  In addition, the staff analysis of the enabling legislation states that " i f the information was confidential it could not be revealed under any circumstances."  The distinction between the two terms was clearly recognized:  " T hus exempt information could be revealed at the discretion of the agency."  [FN9]

\*3 Although the Legislature apparently chose to place the release of this information within the discretion of the agency, in light of the underlying purpose of the enactment, i.e., the safety of law enforcement officers and their families, I am of the opinion that the exercise of any such discretion by the agency must be exercised in light of that legislative purpose. Accordingly, in determining whether such information should be disclosed, an agency should determine whether there is a statutory or substantial policy need for disclosure. [FN10]  In the absence of a statutory or other legal duty to be accomplished by disclosure, an agency should consider whether the release of such information is consistent with the purpose of the exemption.

With respect to your inquiry, there does not appear to be any legal requirement for the display of the names, photographs and I.D. numbers in the police station. As noted supra, photographs of law enforcement officers are exempted from the mandatory disclosure requirements of Ch. 119, F.S.  As the agency head, you must, therefore, in deciding whether to release such **photographs**, determine whether there is a strong policy reason or need for the display of such **photographs** and whether such disclosure is consistent with the intent of the statute which is to protect the safety of such officers and their families.

Thus, I am of the opinion that the purpose of s. 119.07(3)(k), F.S., is to protect the safety of law enforcement officers and their families by removing certain information relating to such individuals from the mandatory disclosure requirements of Ch. 119, F.S.  While the statute does **not prohibit** a **police department** from **posting** the **names, I.D. numbers**, and **photographs** of its **police officers** in the hallway of the department for public display, such a display would appear to be counter to the purpose of the exemption unless there is a strong public policy for disclosing this information.

Question Three

You inquire whether it is a violation of s. 119.07(3)(k), F.S., for the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1990 Fla. Op. Atty. Gen. 154
**(Cite as: 1990 WL 509033, \*3 (Fla.A.G.))**

municipality to maintain the names and addresses of law enforcement officers. The police department is a department of the city; its officers are city employees. I am not aware of any prohibition in s. 119.07(3)(k), F.S., which would prohibit an agency from access to, and maintaining information on, its employees, including their names and addresses.

Accordingly, I am of the opinion that s. 119.07(3)(k), F.S., is not violated by the city maintaining the names and addresses of its law enforcement officers.

Sincerely,

Robert A. Butterworth
Attorney General

[FN1] Section 119.07(3)(a), F.S.

[FN2] See, Inf.Op. to The Honorable Gerald A. Lewis, February 18, 1980, discussing the broad nature of the term "law enforcement personnel" and concluding in part that the exemption cannot be limited only to records of "criminal justice agencies."

[FN3] See, Government-in-the-Sunshine Manual, 1990 edition, stating that rather than pointing to one factor which will result in a finding that an agency is acting on behalf of a public agency for purposes of Ch. 119, F.S., it is necessary to review the factors relating to the responsibilities, organization and functioning of the private entity in their totality and not in isolation. The critical factors are whether the private entity has been delegated any governmental responsibilities and functions, whether the entity receives public funds, or whether the private entity participates in the decision-making process.

[FN4] Cf., s. 166.231, F.S., authorizing a municipality to audit the records of any provider of telecommunications service taxable by such municipality provided that such information provided to the municipality by the telecommunication service provider is exempt from s. 119.07(1), F.S.; and s. 364.183, F.S., providing that the Florida Public Service Commission shall have reasonable access to all telephone company records; however, upon request of the company, the commission shall keep any records it receives from the company which are proprietary confidential business information confidential.

[FN5] You also inquired about the police department's liability for such charges. Your letter, however, did not provide the circumstances for the payment of such charges by the department. The expenditure of any public funds must primarily be for a public purpose; any private benefit must merely be incidental. See, s. 10, Art. VII, State Const. The determination, however, as to whether the benefit derived from an expenditure is primarily public, as opposed to private, is one which must be made by the public agency in question and cannot be delegated to this office. See, AGO's 88-52, 86-87, and 84-101.

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

1990 Fla. Op. Atty. Gen. 154
(Cite as: 1990 WL 509033, *3 (Fla.A.G.))

[FN6] See, Audio tape of hearing of the Senate Committee on Governmental Operations, April 23, 1979, tape 1 of 2.  And see, Lee v. Beach Publishing Company, 173 So. 440 (Fla.1937), and Glow v. State, 319 So.2d 47 (2 D.C.A.Fla., 1975), discussing the "police secrets rule."

[FN7] See, e.g., Senate Staff Analysis and Economic Impact Statement on SB 665, April 18, 1989, codified as Ch. 89-80, Laws of Florida, which amended s. 119.07(3)(k), F.S., to include certain Department of Health and Rehabilitative Services employees and their families.  The staff summaries indicate the need for the exemption of information relating to such employees because "their duties are sometimes very hazardous and similar to those of law enforcement personnel."  Cf., s. 119.14(4)(b)2., F.S., of the Open Government Sunset Review Act, which provides for the retention of certain exemptions to Ch. 119, F.S., which "[p]rotects information of a sensitive personal nature concerning individuals, the release of which ... would jeopardize the safety of such individuals."

[FN8] See, Audio tape of hearing of the Senate Committee on Governmental Operations, April 23, 1979, tape 1 of 2.

[FN9] See, Senate Staff Analysis and Economic Impact Statement on HB 1531, April 20, 1979.

[FN10] See, Inf.Op. to Mr. Lee Reese, April 25, 1989, in which this office concluded that a former law enforcement officer's address could be released for the purpose of serving a subpoena.
1990 Fla. Op. Atty. Gen. 154, Fla. AGO 90-50, 1990 WL 509033 (Fla.A.G.)
END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works